UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **DAVID RAY JOHNSON** | **CIVIL ACTION NO. 18-1091** |
| | **SECTION P** |
| VS. | |
| | **JUDGE TERRY A. DOUGHTY** |
| **RICHLAND PARISH DETENTION CENTER, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

**REPORT AND RECOMMENDATION**

Plaintiff David Ray Johnson, a detainee at Richland Parish Detention Center ("RPDC") proceeding pro se and in forma pauperis, filed the instant proceeding on August 22, 2018, under 42 U.S.C. § 1983. He names the following defendants: RPDC, Warden Ricky Scott, Sheriff Gary Gilley, and Sergeant Holcutt.[1] For reasons that follow, the Court should dismiss Plaintiff's claims.

**Background**

Plaintiff alleges that, on August 8, 2018, he slipped in a puddle of water in his dorm and fell, injuring his neck, back, head, nerves, and muscles. [doc. # 1, pp. 3-4]. Sergeant Holcutt transported him to the hospital four hours after the fall. *Id.* Plaintiff received an x-ray, a prescription for "Nuroproxen," and a "check up to make sure there were no broken bones," but he claims that he was never treated for his "damaged nerves" or his "blackouts," that he "was never checked for . . . spinal damage, nerve damage [to his] neck and back, or soft tissue damage," that he did not receive physical therapy, that he did not receive a "medical mat" to sleep on, and that he endured pain for two to three weeks before he received his prescribed

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

medication. [doc. #s 1, pp. 3-4; 16, pp. 6-7].

Plaintiff alleges that Warden Scott is responsible for "the up-keep and maintenance of" RPDC. *Id.* at 4. He also alleges that other inmates have complained to Warden Scott about water leaking from the showers, which causes inmates to fall and enables slippery mold to grow on the floors and walls. *Id.*

Plaintiff alleges, similarly, that Sheriff Gilley is responsible because he houses inmates "in a dormitory that he knows" is not safe. *Id.* "Defendant Gilley is aware of the repair issues needed at the said facility, and he has been negligent of providing the funds needed to make the repairs. [sic]." *Id*. "The water leakage has been going on for over a two year period. [sic]." *Id.*

Plaintiff continues to suffer from sores, headaches, impaired vision, back pain, neck pain, mental anguish, swelling, pinched nerves, bruised muscles, blackouts, and possible internal bleeding. [doc. #s 1, p. 4; 16, p. 5]. He seeks punitive damages and $300,000.00 in compensation, and he requests "ongoing medical and chiropractic care." *Id.*

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[2] See *Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b)

---

[2] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

2

provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

Likewise, a complaint fails to state a claim on which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the

3

allegations of the complaint. In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. RPDC and RPDC Staff**

Plaintiff claims that RPDC is responsible for the conditions he endured and much of the inadequate care he received. [doc. # 16, pp. 6-7, 9]. In addition, while he does not explicitly name RPDC "staff" as a defendant, he does allege that, after he fell, the staff placed him in

4

segregation, where he suffered agonizing pain for four hours before the staff transported him to the hospital. [doc. # 16, p. 9].

Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ." Under Louisiana law, an entity must qualify as a "juridical person," which is "an entity to which the law attributes personality, such as a corporation or partnership." LA. CIV. CODE art. 24. Here, RPDC and RPDC staff do not qualify as juridical persons. See *Henderson v. Mid States Servs., Inc.*, 67 F. App'x 247 (5th Cir. 2003) (finding that the plaintiff did not show "that the Medical Department is a legal entity amenable to suit . . . ."). Accordingly, the Court should dismiss Plaintiff's claims against these entities.

If, by "staff," Plaintiff means individuals other than those he identified in his pleadings, he does not identify these persons and does not address how each person was personally involved in depriving him of a constitutional right.

Section 1983 provides in relevant part: "Every person who . . . *subjects, or causes to be subjected*, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983 (emphasis added). If a person is not personally involved, then, *a fortiori*, he cannot subject another to, or cause, a deprivation of constitutional rights. See *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action."). Accordingly, to the extent Plaintiff names the "staff" as a group of unidentified persons, the Court should dismiss Plaintiff's claims.

### 3. Medical Care

Plaintiff briefly alleges that, after he fell, an unidentified nurse placed him in segregation,

5

where he suffered agonizing pain for four hours before the staff transported him to the hospital.[3] [doc. # 16, p. 9]. Plaintiff also faults Sergeant Holcutt for waiting four hours before transporting him to the hospital. *Id.* at 10.

To prevail, a plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (quoting *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); see *Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); see *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir.

---

[3] Plaintiff does not explicitly name the unidentified nurse as a defendant.

6

1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

Here, Plaintiff does not allege that either the unidentified nurse or Sergeant Holcutt knew that he was experiencing "agonizing pain" or that he otherwise faced a substantial risk of serious harm. Rather, Plaintiff alleges only that the nurse "deliberately waited 4 hours to take me to see about possible head, neck and spinal [] injuries."[4] [doc. # 16, p. 9]. Likewise, Plaintiff only alleges that Holcutt knew he "was knocked out unconscious due to" the fall.[5] *Id.* at 10. Holcutt's alleged knowledge of Plaintiff's unconsciousness does not, without more, plausibly equate to knowledge of a substantial risk of serious harm during the alleged four-hour delay.

Plaintiff, in other words, does not allege the type of "'cold hearted, casual unwillingness to investigate what can be done for a man who is obviously in desperate need of help'" that the Fifth Circuit has "recognized as necessary to constitute deliberate indifference." See *Davis v.*

---

[4] Plaintiff does not allege that the unidentified nurse refused care during the delay. See, e.g., *Saldivar v. Davis*, 698 F. App'x 198, 199 (5th Cir. 2017) ("The record also indicates that Saldivar was not denied medical treatment. Immediately after Saldivar's fall, she was examined and treated by the prison nurse. The prison nurse continued to examine and treat Saldivar from the day of the injury until Saldivar saw the prison doctor. The record does not support a conclusion that the defendants refused to treat Saldivar, ignored her complaints, intentionally treated her incorrectly, or acted in any way to evidence a wanton disregard for her serious medical needs.").

[5] Plaintiff does not allege, for example, that Sergeant Holcutt failed to timely request care for Plaintiff from a medical professional.

7

*Lithicum*, 574 F. App'x 379, 380 (5th Cir. 2014).[6] The Court should dismiss these claims.[7, 8]

**4. Slippery Dormitory Floor**

Plaintiff faults Warden Ricky Scott, Sheriff Gary Gilley, and unidentified guards for negligently failing to remedy moldy, slippery floors in the dormitory caused by water emanating from the showers. [doc. # 16, pp. 4-5, 10].

Plaintiff is a pretrial detainee. [doc. # 1-3]. The Due Process Clause of the Fourteenth

---

[6] See *Westfall v. Luna*, 903 F.3d 534, 551 (5th Cir. 2018) ("Although Westfall may have been in pain during that time, the officers' half-hour delay in calling for medical assistance does not clearly evince a wanton disregard for Westfall's medical needs. In addition, no substantial harm appears to have resulted from the delay. The only lasting injury suffered by Westfall is her spinal injury, which Westfall does not claim was impacted by a delay in receiving medical care. Indeed, Westfall claims that the treatment for her spinal injury thus far has simply been therapy and 'two rounds of injections.' As for the pain she endured during her wait for the paramedics, in her complaint, Westfall says only that she 'was moaning in pain' while waiting in the back of the police car, without more details as to the severity of her pain. This is not substantial harm."); *Bisby v. Garza*, 342 F. App'x 969, 971 (5th Cir. 2009) (Bisby contends that [a prison sergeant] was deliberately indifferent to his serious medical needs by ordering him back to his cell and denying him immediate medical treatment after his fall. The record, however, indicates that Bisby was seen within hours of his slip and fall, and it does not indicate that his pain was sufficiently severe during the period between his fall and his examination by medical personnel to give rise to an Eighth Amendment violation.").

[7] See also *White v. Rader*, 2010 WL 1744652, at *4 (M.D. La. Mar. 29, 2010), report and recommendation adopted, 2010 WL 1737139 (M.D. La. Apr. 28, 2010) ("[I]t is recognized that even persons who are not confined in penal institutions must suffer waits of several hours in hospital emergency rooms or even waits of several days before obtaining appointments with their chosen physicians."); *Solis v. Gatson*, 2016 WL 9686992, at *9 (W.D. Tex. June 22, 2016) ("Defendants addressed Plaintiff's complaints—he was taken to the infirmary for evaluation by a nurse and was eventually taken to a hospital emergency room. Had Defendants acted with deliberate indifference, no action would have been taken at all. The mere fact that Plaintiff wanted them to act quicker or to respond in a different manner is insufficient to state a claim for deliberate indifference to his serious medical needs.").

[8] Plaintiff does not name physicians at the hospital as defendants, but he does mention that they failed to provide physical therapy and failed to "check" him for spinal, nerve, and soft tissue damage. [doc. # 16, pp. 6-8]. Considering that the physicians checked him "to make sure there were no broken bones," prescribed "Nuroproxen," scanned him with an x-ray, and diagnosed him with possible soft tissue damage, Plaintiff simply disagrees with his treatment. Thus, to the extent he seeks relief from the physicians, he does not state a plausible claim under Section 1983.

8

Amendment prohibits the punitive confinement of a pretrial detainee because, by definition, the guilt of a detainee has not been adjudicated. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). To determine the applicable analysis, courts must first classify a plaintiff's challenge as either an attack on a "condition of confinement" or as an "episodic act or omission." *Flores v. County of Hardeman, Tex.*, 124 F.3d 736, 738 (5th Cir. 1997). The former is a challenge to the "general conditions, practices, rules, or restrictions of pretrial confinement." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 644 (5th Cir. 1996). In contrast, an "episodic act or omission" claim concerns a particular act or omission of one or more officials, and it focuses on "whether [the] official breached his constitutional duty to tend to the basic human needs of persons in his charge." *Id.* at 645.

Here, because Plaintiff alleges that he slipped and fell on one occasion, "'this case does not fit well within the conditions-of-confinement category . . . .'" See *Hernandez v. Bexar Cty. Sheriff's Dep't*, 2019 WL 2290907, at *1 (5th Cir. May 28, 2019) (quoting *Scott v. Moore*, 114 F.3d 51, 53-54 (5th Cir. 1997)). "A jail official violates a pretrial detainee's constitutional right to be secure in his basic human needs only when the official had subjective knowledge of a substantial risk of serious harm to the detainee and responded to that risk with deliberate indifference. In other words, the state official must know of and disregard an excessive risk to inmate health or safety. [T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Estate of Henson v. Wichita Cty., Tex.*, 795 F.3d 456, 464 (5th Cir. 2015) (internal quotation marks and quoted sources omitted).

Here, Plaintiff does not allege that Warden Scott or Sheriff Gilley knew that either the mold or the water on the floor presented a substantial risk of serious harm. He alleges that

9

Warden Scott is responsible for maintaining the facility and that other inmates notified Warden Scott "that the shower area, and toilet area has a constant leakage that has developed severe mold and bacteria that grows on the concrete walls and floors that causes inmates to slip and fall. [sic]." [doc. # 16, p. 4]. He also alleges that Sheriff Gilley knew that the dormitory contained black mold and that, therefore, it required repairs and maintenance. *Id.*

That the two defendants knew, generally, of the condition and failed to remedy it, however, does not mean that the defendants were deliberately indifferent to a substantial risk of serious harm *to Plaintiff*. See *Hernandez*, 2019 WL at *1 (finding, where the plaintiff "generally asserted that officials negligently maintained the yard by allowing it to become slippery[,]" that the plaintiff "failed to assert that officials knew the recreation yard presented a substantial risk of serious harm and subjectively meant for harm to occur.") *Mack v. Johnson*, 48 F. App'x 105 (5th Cir. 2002) (concluding, where a prisoner slipped and fell in a puddle of water in his cell, that the prisoner alleged, "at most," negligence even though the defendants knew about the leak but failed to repair it).[9]

Plaintiff mentions that the leak "has been going on for over a two year period. [sic]."

---

[9] See also *Coleman v. Sweetin*, 745 F.3d 756, 764–65 (5th Cir. 2014) (per curiam) (explaining that federal courts frequently reject claims based on slip and fall accidents because "the existence of slippery conditions in any populous environment represents at most ordinary negligence rather than a condition so threatening as to implicate constitutional standards."); *Atkins v. Sheriff's Jail Avoyelles Par.*, 278 F. App'x 438, 439 (5th Cir. 2008) (concluding, where a prisoner alleged that officials failed to repair leaks that caused water puddles, which in turn caused the prisoner to fall, that the prisoner did not show "that the officials disregarded any inference that there was a substantial risk of serious harm" and that the claims amounted only to negligence); *Marsh v. Jones*, 53 F.3d 707, 711–712 (5th Cir. 1995) (holding that "a garden-variety negligence claim" based on damages arising from a leaking air conditioner unit and a slippery floor "is not actionable under section 1983."); *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (explaining that "acts of negligence . . . do not constitute deliberate indifference"); *Hemphill v. Hamilton*, 381 F. App'x 416, 417 (5th Cir. 2010); *Andrews v. Belt*, 274 F. App'x 359, 360 (5th Cir. 2008).

[doc. # 16, p. 4]. To the extent he seeks to contest a condition of confinement (due to the duration of the leak), he does not state a plausible claim.

To determine whether the condition is a punishment, and therefore unconstitutional, courts must ascertain whether the "particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective." *Bell*, 441 U.S. at 539. "[I]f a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees." *Id.*

Here, as in *Hernandez*, Plaintiff "makes no plausible allegation that officials intended" the leaking water "to be dangerous to punish the detainees or that the possibility a detainee might slip and fall was extreme in relation to the valid purpose" of the showers and dormitory. See *Hernandez*, 2019 WL at *2.

At bottom, Plaintiff describes possible negligent conduct. To state a claim under Section 1983, a prisoner must allege a violation of a constitutional right. Allegations of negligence do not state claims of constitutional dimension. *Daniels v. Williams*, 474 U.S. 327, 336 (1986) (holding that the United States Constitution does not address injuries inflicted by governmental negligence); *Hernandez ex rel. Hernandez v. Texas Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 882 (5th Cir. 2004) (recognizing that plaintiffs must "demonstrate culpability beyond mere negligence or even gross negligence.").

To the extent Plaintiff seeks to pursue negligence claims, he should do so in state court. The Court should dismiss these claims.

**5. Mold**

Plaintiff alleges that black mold grows on the walls and floors near the showers and

toilets. [doc. # 16, p. 4]. Inmates try to clean it, but the mold returns because of the "constant leakage . . . ." *Id.*

To the extent Plaintiff seeks relief for exposure to mold—rather than for the slippery conditions resulting from the mold—he does not state a plausible claim. "'There is, of course, a *de minimis* level of imposition with which the Constitution is not concerned.'" *Bell*, 441 U.S. at 539 (quoting *Ingraham v. Wright*, 430 U.S. 651, 674 (1977)). "[T]he fact that [] detention interferes with the detainee's understandable desire to live as comfortably as possible . . . does not convert the conditions or restrictions of detention into 'punishment.'" *Id.* at 537. "Courts must be mindful that [inquiries into whether conditions are arbitrary, purposeless, or punitive] spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility." *Id.* at 539. Courts should, in certain circumstances, "defer to the informed discretion of prison administrators because the realities of running a corrections institution are complex and difficult, courts are ill equipped to deal with these problems, and the management of these facilities is confided to the Executive and Legislative Branches, not to the Judicial Branch." *Id.* at n.2.

The conditions Plaintiff alleges here are, while unpleasant, de minimis. Courts have repeatedly held that the presence of mold and dampness does not render confinement unconstitutional. See *Mahmoud v. Bowie*, 234 F.3d 29 (5th Cir. 2000) (finding the following conclusional and de minimis: allegations of an unsanitary shower and toilet area, a lack of hygiene items, and unappetizing food); *Eaton v. Magee*, 2012 WL 2459398, at *5 (S.D. Miss. June 27, 2012); *Barnett v. Shaw*, 2011 WL 2200610, at *2 (N.D. Tex. May 18, 2011); *Reynolds v. Newcomer*, 2010 WL 234896, at *10 (W.D. La. Jan. 19, 2010); *Williams v. Gusman*, 2015 WL 5970424, at *3 (E.D. La. Oct. 14, 2015); *Carr v. Newcomer*, 2010 WL 331689, at *9 (W.D. La.

Jan. 19, 2010) *Cooper v. Med. Staff Nurses*, 2018 WL 4214163, at *6 (W.D. La. Aug. 24, 2018), report and recommendation adopted, 2018 WL 4210809 (W.D. La. Sept. 4, 2018). Accordingly, the Court should dismiss this condition-of-confinement claim.

### Recommendation

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff David Ray Johnson's claims be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 19th day of June, 2019.

Karen L. Hayes
United States Magistrate Judge